[Cite as *State v. Monaco*, 2024-Ohio-535.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023AP070040 |
| JASON D. MONACO | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2020 CR 08 0318

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      February 13, 2024

APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

RYAN STYER
Prosecuting Attorney
125 East High Avenue
New Philadelphia, OH 44663

NATHAN RAY
137 South Main Street
Suite 201
Akron, OH 44308

*Gwin, J.*

{¶1} Defendant-appellant Jason D. Monaco [Monaco] appeals the June 22, 2023 Judgment Entry setting forth Findings of Fact and Conclusions of Law after remand by this Court for the denial of his Petition for Post-Conviction relief.

*Facts and Procedural History*

{¶2} On August 14, 2020, Monaco was indicted on four counts of Gross Sexual Imposition in violation of R.C. 2907.05, two counts of Sexual Imposition in violation of R.C. 2907.06, one count of Kidnapping in violation of R.C. 2905.01, one count of Rape in violation of R.C. 2907.02, one count of Attempted Rape in violation of R.C. 2923.02 and 2907.02, four counts of Disseminating Matter Harmful to Juveniles in violation of R.C. 2907.31, and two counts of Pandering Obscenity Involving a Minor or Impaired Person in violation of R.C. 2907.321. The facts underlying the indictment show Monaco repeatedly sexually abused a minor relative over a period of years. *See, State v. Monaco,* 5th Dist. Tuscarawas No. 2021 AP 01 0002, 2021-Ohio-3888, ¶7 [*Monaco, I*].

{¶3} Subsequently, Monaco entered a plea of guilty to the indictment. The trial court sentenced him as follows: Counts 5 and 6 merges with Counts 3 and 4 for the purposes of sentencing. Count 1- 60 months in prison; Count 2 - 60 months in prison, Count 3 - 18 months in prison; Count 4 - 18 months in prison; Count 7 - mandatory 15 years to life in prison; Count 8 - mandatory 10 years to life in prison; Count 9 - 8 years in prison; Count 10 - 18 months in prison; Count 11 - 12 months in prison; Count 12 - 18 months in prison; Count 13 - 180 days in prison; Count 14 - 8 years in prison; and Count 15 - 8 years in prison. The sentences were ordered to be served concurrently for an aggregate sentence of 15 years to life. *See, Monaco, I at ¶2.*

**{¶4}** Monaco did not file an appeal from his conviction or sentence. Instead, on October 29, 2020, he filed a pro se motion to change his plea to not guilty and appoint new counsel. Monaco alleged he was under duress and not of sound mind due to extreme depression and anxiety when he signed his guilty plea. He also alleged that he did not understand the evidence against him as his attorney did not go through the discovery documents with him. Monaco stated he was not guilty of the accusations. *Monaco, I,* ¶11.

**{¶5}** On November 30, 2020, the trial court held a hearing on the pro se request for Monaco to withdraw his guilty plea. At the hearing, Monaco stated that on the date of the plea and sentencing he was very shaken. He acknowledged that he discussed with counsel his plea, the rights he was waiving, and penalties he would be facing. Monaco stated that he did not review the discovery provided by appellee with his attorney. He stated that he was suffering from anxiety and depression but was not under the influence of drugs or alcohol the day of sentencing. Monaco did not submit a professional report to substantiate his claim of suffering from depression, anxiety, or any other mental health condition likely to impair his ability to voluntarily, intelligently, and knowingly enter a plea of guilty. Monaco acknowledged that he had reviewed the evidence extracted from his electronic devices, that he knew the plea offer was for fifteen years to life, and that he thought he should not have pled guilty because it wasn't a fair deal. *Monaco, I,* ¶12.

**{¶6}** During the hearing, the state presented under seal the state's response to Monaco's discovery request [Exhibit A], a four page written statement from the victim detailing the allegations of sexual abuse, dated July 14, 2020 [Exhibit B], a second two-page written statement from the victim, dated July 14, 2020 [Exhibit C], a fourteen page typewritten transcript of a one hour telephone conversation recorded between the victim

and Monaco [Exhibit D], a three page handwritten statement by the victim, dated July 30, 2020 [Exhibit E], a thumb drive containing audio and video files of Monaco's interview by the police and the one hour phone call between him and the victim. [Exhibit F]. T. Nov. 30, 2020 at 29-30.

{¶7} The trial court overruled Monaco's motion to withdraw his post-sentence guilty plea and Monaco appealed. Pursuant to an Opinion filed on October 29, 2021 in *State v. Monaco*, 5th Dist. Tuscarawas No. 2021 AP 01 0002, 2021-Ohio-3888 [*Monaco, I*], this Court affirmed the judgment of the trial court.

{¶8} Thereafter, on November 18, 2021, Monaco filed a Petition to Vacate and Set Aside Sentence. *State v. Monaco,* 5th Dist. Tuscarawas No. 2021 AP 12 0035, 2022-Ohio-2353, ¶ 7. [*Monaco, II*].

{¶9} Monaco, in his petition, alleged that his trial counsel was ineffective. Monaco again alleged that his trial counsel never reviewed any discovery with him and that Monaco did not know what the evidence was against him, that while in the county jail, he had a mental health breakdown due to stress. Monaco added to his claim that during the time that trial counsel was representing appellant, trial counsel, due to being investigated by the Board of Professional Conduct for ethical violations, was preoccupied and failed to provide effective representation. In support of his petition, Monaco submitted a copy of his handwritten motion previously filed with the trial court on Oct. 24, 2020 [Defendant's Exhibit A]; Community Mental Health Treatment Summary, dated October 14, 2021 [Defendant's Exhibit B]; 7 page typewritten Affidavit of Jason D. Monaco [Defendant's Exhibit C]; and a Coshocton Tribune article which is titled "Complaint:

Attorney accused of having affair with client", "[Attorney] has a complaint pending with the Board of Professional Conduct," dated March 12, 2021.

{¶10} The trial court, pursuant to a Judgment Entry filed on December 2, 2021, denied Monaco's Petition. *Monaco II*, ¶7.

{¶11} In *Monaco II*, this Court held the trial court should have reviewed Monaco's motion as a motion for postconviction relief under R.C. 2953.21. *Monaco, II,* ¶15. As such, the trial court was required to make findings of fact and conclusions of law when denying the petition. Therefore, because the trial judge denied the petition for postconviction relief without stating her reasons for denying the petition, this Court reversed and remanded the matter to the trial judge to make findings of fact and conclusions of law.

{¶12} Pursuant to the remand, on June 22, 2022, the trial judge issued findings of fact and conclusions of law in support of the decision to deny Monaco's Petition to Vacate and Set Aside Sentence filed November 18, 2021.

*Assignments of Error*

{¶13} Monaco raises two Assignments of Error,

{¶14} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED PETITIONER APPELLANT MONACO'S TIMELY FILED PETITION FOR POST-CONVICTION RELIEF PURSUANT TO O.R.C. 2953.21 BY FINDING THAT IT WAS BARRED BY THE DOCTRINE OF RES JUDICATA.

{¶15} "II. THE TRIAL COURT ERRED IN DENYING MONACO'S POST-CONVICTION RELIEF PETITION WHERE HE PRESENTED SUFFICIENT EVIDENCE DEHORS THE RECORD TO MERIT AN EVIDENTIARY HEARING."

## I. & II.

**{¶16}** In his First Assignment of Error, Monaco argues that the trial court abused its discretion by finding in part that the petition was barred by the doctrine of res judicata. In support Monaco argues that his arguments are not barred by the doctrine of res judicata because he was not represented by counsel in the trial court on his motion to withdraw his guilty plea and because he had provided the trial court with new evidence outside the record to support his request for postconviction relief.

**{¶17}** In his Second Assignment of Error, Monaco argues that the trial court erred when the court denied Monaco's petition without a hearing. Specifically, Monaco argues he provided the court with an affidavit and other documents that set forth operative facts to establish substantive grounds for relief to establish that he was denied the effective assistance of counsel, and was therefore entitled to a hearing.

**{¶18}** Because the assignments of error are inextricably intertwined we shall address them together.

### Standard of Review

**{¶19}** We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard. *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 38, *citing State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51-52, 58.

### *Postconviction relief*

**{¶20}** A postconviction proceeding is a collateral civil attack on a criminal conviction. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999); *State v.*

*Phillips*, 9th Dist. No. 20692, 2002-Ohio-823. R.C. 2953.21(A) states, in part, as follows: "(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief".

*Right to evidentiary hearing in postconviction proceedings is not automatic*

**{¶21}** In *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, the Ohio Supreme Court addressed the standard to be used for determining whether a hearing should be held on a post-conviction petition and emphasized that it was only addressing the standard for holding a hearing on a timely-filed post-conviction petition and not the standard for ultimately granting relief on the petition. Id. at ¶ 22.

**{¶22}** Under the post-conviction statutes, a trial court must, before granting an evidentiary hearing, "determine whether there are substantive grounds for relief." Id. at ¶ 23, citing R.C. 2953.21(D). "If the petition 'is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief.'" Id., *citing State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975).

**{¶23}** The *Bunch* court further explained that in determining whether there are substantive grounds for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in post-conviction

proceedings. Then, "[i]f the record does not on its face disprove the petitioner's claim," the court is required to "proceed to a prompt hearing on the issues." Id. at ¶ 24, citing R.C. 2953.21(F).

*Postconviction review of ineffective-assistance-of-counsel claims*

{¶24} In order for an indigent petitioner to be entitled to an evidentiary hearing in a postconviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is to be applied. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *State v. Lytte*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). The petitioner must therefore prove that: 1). counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different, or he would not have pled guilty. Id.

*Application of res judicata in postconviction-relief proceedings raising ineffective*
*assistance of counsel claims*

{¶25} With respect to post-conviction petitions asserting grounds for relief based on ineffective assistance, res judicata does not bar a post-conviction ineffective-assistance-of-counsel claim when either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the trial record to establish his claim for relief. * * * The converse is that when the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction claim is barred." *State v. Blanton,* 171 Ohio St.3d 19, 2022-Ohio-3985,

215 N.E.3d 467, ¶ 2, *citing State v. Cole*, 2 Ohio St.3d 112, 113-114, 443 N.E.2d 169 (1982). However, merely providing evidence outside the record is not sufficient to entitle a petitioner to a hearing. Rather, to secure a hearing, a petitioner "'must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner].'" Id. at ¶ 31, *quoting Cole* at 114, 443 N.E.2d 169; *State v. Johnson*, 12th Dist. Warren No. CA2022-09-063, 2023-Ohio-879, ¶21.

Monaco is not represented by the same attorney that represented him in the trial court or in *Monaco, I*; however, the attorney representing Monaco in this appeal is the same attorney who represented him in *Monaco, II.* Monaco attached his affidavit and documents to his PCR petition that were not a part of the trial court record.

*Review of affidavits submitted in support of postconviction relief petition*

{¶26} When reviewing a postconviction petition a trial court "should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as "true statements of fact" or "discard frivolous claims." *State v. Calhoun*, 86 Ohio St.3d 279, 282, 714 N.E.2d 905 (1999). In determining the credibility of supporting affidavits in postconviction relief proceedings, the trial court should consider all relevant factors, including (1) whether the judge reviewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the

affidavits contradict evidence proffered by the defense at trial. Id. at 285, 714 N.E.2d 905. "Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." Id. "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court." Id.

{¶27}  A trial court that discounts the credibility of sworn affidavits must include an explanation of its basis for doing so in its findings of fact and conclusions of law. Id.; *State v. Blanton,* 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶98; *State v. Barron*, 12th Dist. Warren No. CA2022-09-059, 2023-Ohio-1249, ¶ 20, *appeal not allowed*, 170 Ohio St.3d 1517, 2023-Ohio-2771, 214 N.E.3d 590, ¶ 20.

{¶28} Justice Donnelly recently expressed the following concern about the treatment of a defendant's affidavit submitted in support of his petition for post-conviction relief,

It is, of course, possible that Dunlap's claims would not have been borne out by the facts established during an evidentiary hearing. But he does not deserve to have his claims dismissed out of hand with the usual bromides about relying on a "self-serving affidavit." A defendant in this scenario is rarely ever going to have anything to back up a plea-withdrawal motion other than his own claims about what happened. And only an evidentiary hearing will establish whether those claims are true. As I stated in my dissenting opinion in *State v. Bozso*, 162 Ohio St.3d 68, 2020-Ohio-

3779, 164 N.E.3d 344, "a defendant cannot be expected to make a record of the fact that he has been misinformed about a crucial issue at the time he is operating under that misinformation." Id. at ¶ 44 (Donnelly, J., dissenting). To say that a defendant's claims in support of withdrawing his plea do not warrant an evidentiary hearing because they are not already backed up by solid, admissible evidence puts the defendant in an impossible position and ensures that an evidentiary hearing is never warranted no matter how specific and convincing a defendant's claims might be.

State v. Dunlap, 161 Ohio St.3d 1416, 2021-Ohio-181, 161 N.E.3d 704 (Table), appeal not allowed, Donnelly, J., dissenting. See also, State v. Blanton, 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶98 ("But sworn affidavits 'should not lightly be deemed false.' [State v. Calhoun, 86 Ohio St.3d 279,] 284, [714 N.E.2d 905 (1999)]. And when a trial court 'discounts the credibility of sworn affidavits,' it should 'include an explanation of its basis for doing so.' Id. at 285, 714 N.E.2d 905.").

*Monaco's Substantive Claims*

{¶29} Monaco's petition was filed by counsel. As grounds, Monaco claims he received ineffective assistance of trial counsel contending 1). trial counsel did not meet with him and go over the discovery provided by the state; 2). That while in jail Monaco had a "mental health breakdown" and was placed on suicide watch for approximately one week; 3). That he was on medication and suffering mental health issues when he entered his plea and was in fear that his trial attorney was not prepared for trial. [*Jason D. Monaco's Petition to Vacate and Set Aside Sentence Hearing Requested,* filed Nov. 18,

2021 at 6. [Docket Entry No. 95] [Hereinafter, "PCR petition"]; 4). Trial counsel was under investigation by the Board of Professional Conduct during the time period during which he was representing Monaco. Id. at 7.

*Monaco's guilty plea*

{¶30} A plea of guilty constitutes a complete admission of guilt. Crim. R. 11 (B)(1). "By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime." *United v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927(1989).

{¶31} Crim. R. 11 requires guilty pleas to be made knowingly, intelligently and voluntarily. The constitutional rights that the trial court must advise the defendant before accepting his or her plea are: (1) a jury trial; (2) confrontation of witnesses against him; (3) the compulsory process for obtaining witnesses in his favor; (4) that the state must prove the defendant's guilt beyond a reasonable doubt at trial; and (5) that the defendant cannot be compelled to testify against himself. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. Id. at ¶ 31.

{¶32} The non-constitutional rights that the defendant must be informed of are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions; and (4) that after entering a guilty plea or a no-contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10-13; *State v. Sarkozy*, 117 Ohio St.3d

86, 2008-Ohio-509, 423 N.E.2d 1224, ¶ 19-26, (post-release control is a non-constitutional advisement).

**{¶33}** For the non-constitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15.

**{¶34}** Monaco does not argue that the trial court failed to comply with Crim R. 11's strict or substantial compliance requirements before accepting his guilty pleas.

*Monaco's written waivers*

**{¶35}** A written waiver of constitutional rights is presumed to have been voluntary, knowing, and intelligent. *State v. Turner*, 105 Ohio St.3d 331, 2005-Ohio-1938, 826 N.E.2d 266, ¶25. In this case, Monaco signed both the original plea agreement and a revised plea agreement. T. Nov. 30, 2020 at 24. *See also, Monaco, I* at ¶4. Further, the trial court conducted a lengthy inquiry concerning each of Monaco's constitutional rights during the change of plea hearing. *Monaco, I,* at ¶6. The trial judge gave Monaco several opportunities to ask questions or bring any concerns to her attention. Id. Monaco did not.

**{¶36}** In the case at bar, the state did not seek consecutive sentences, the sentence Monaco received was negotiated and was known by him prior to entering his plea. T. Nov. 30, 2020 at 26. Additional charges were not pursued by the state based upon the plea negotiations. Id. at 31. Prior to sentencing, the state detailed the evidence in support of each charge to which Monaco pled guilty on the record. T. *Change of Plea and Imposition of Sentence Hearing,* Oct. 21, 2020 at 16 – 26; *See also, Monaco, I* at ¶7.

Monaco did not dispute the recitation, inform the trial judge he was not guilty of some or any of the allegations, or indicate his confusion or inability to comprehend the evidence against him.

{¶37} We find based upon our review of the entire record, the record discloses that: (1) Monaco's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) Monaco was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, therefore the guilty plea has been voluntarily and intelligently made. *See, State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), paragraph one of the syllabus.

### *Monaco's mental health claims*

{¶38} The Community Mental Health summary attached to Monaco's PCR petition as Defendant's Exhibit B is dated October 14, 2021. The document indicates that intake was completed on September 22, 2020 with a finding, "Adjustment Disorder with mixed anxiety & depressed mood & Alcohol Use Disorder, severe." The recommendation was for Monaco to attend weekly counseling sessions. The document indicates Monaco completed five sessions before his transfer to prison.

{¶39} The mental health assessment does not indicate that Monaco was, or is, incapable of exercising rational, intelligent thought as a result of his diagnosis. The report makes no mention of an inability of the intake officer to communicate with Monaco or that Monaco's responses were incoherent, unintelligent or indicative that he was unaware of what was being asked by the intake officer or counselor. Monaco admitted that no special

requests in terms of his mental health were made by his counselor while Monaco was in the jail. T. Nov. 30, 2020 at 17. Monaco saw the counselor the Monday before he entered his plea and the Monday after he entered his plea and no special requests were made to the jail by his counselor. Id. Monaco admitted that he had been released from suicide watch after one week, telling the doctor that he was no longer having suicidal thoughts. T., Nov. 30, 2020 at 16.

{¶40} The Supreme Court of Ohio has recognized a distinction exists between being mentally or emotionally ill and not being competent to stand trial. "[A] defendant may be emotionally disturbed or even mentally ill and yet competent to stand trial." *State v. Ferguson*, 108 Ohio St.3d 451, 2006-Ohio-1502, ¶ 46, *quoting State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio 1580, ¶ 38. Stated differently, "Incompetency is defined in Ohio as the defendant's inability to understand "* * * the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(A). Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel. *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

{¶41} Monaco has never raised a claim that he was incapable of assisting his attorney or that he was unable to understand the proceedings. In fact, his pro se filings in the case evidence his acumen with respect to the criminal charges, court proceeding, the role of the prosecutor, defense counsel and the trial judge.

{¶42} The evidence in the record does not demonstrate a long and continuing history of pronounced irrational behavior on Monaco's part that would give rise to a

constitutional right to a formal inquiry into his competency to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975); *Brock,* at 110. Nor does the evidence Monaco submitted in support of his claim that his plea of guilty should be vacated because he was emotionally disturbed or even mentally ill at the time he entered his plea, give rise to a claim that he was unable to understand the charges, the effect of his decision to plead guilty, the court proceedings and the sentence. Monaco points to no evidence in the record or outside the record that suggests "a reasonable and legitimate basis for withdrawal of the plea," or that he has a viable defense to the charges. *State v. Xie,* 62 Ohio St.3d 521 at 584, 584 N.E.2d 715; *State v. Cuthbertson*, 139 Ohio App.3d 895, 899, 746 N.E.2d 197 (7th Dist. 2000).

{¶43} Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Monaco set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*Monaco's affidavit*

{¶44} Monaco's affidavit again addresses his claims that he was too mentally distraught to understand the charges, and that his attorney did not review discovery with him. The trial court discounted the affidavit because the trial judge found the statements to be contradicted by the record.

{¶45} "Not every restriction on counsel's time or opportunity * * * to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). "[T]here is generally no basis for finding a Sixth Amendment violation unless the accused

can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) fn. 26; *Accord, State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032.

**{¶46}** "[T]he Sixth Amendment imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options." *Strickland,* 466 U.S. at 680. However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective.... Limitations of time and money ... may force early strategic choices, often based solely on conversations with the defendant and a review of the prosecution's evidence." Id. at 681.

**{¶47}** The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610(1983); *State v. Blankenship,* 102 Ohio App.3d 534, 657 N.E.2d 559(12th Dist. 1995); *State v. Burroughs*, 5th Dist. Delaware No. 04CAC03018, 2004-Ohio-4769, ¶ 11. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), *citing People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089 (1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 21.

**{¶48}** Monaco provides no evidence that counsel failed to investigate any line of defense, or that counsel himself failed to review the evidence provided to him by the state.

Monaco does not suggest that counsel overlooked or failed to investigate evidence of Monaco's innocence and does not provide any witnesses or other evidence to refute the compelling and overwhelming evidence of his guilt provided by the state. In the case at bar, Monaco points to no specific attorney errors that resulted from counsel's representation, and he makes no showing of prejudice. We cannot presume that the defendant has suffered prejudice. *Hancock*, 108 Ohio St.3d 57, ¶112, citing, *State v. Coleman*, 85 Ohio St.3d 129 at 144, 707 N.E.2d 476 (1999); *State v. Sanders*, 92 Ohio St.3d 245 at 277, 750 N.E.2d 90 (2001).

**{¶49}** A review of the whole record demonstrates that defense counsel zealously and effectively negotiated a favorable plea agreement to limit Monaco's potential prison sentence and forgo the potential filing of additional charges. Counsel candidly advised Monaco concerning his appraisal of the case based upon counsel's review of the evidence against Monaco.

**{¶50}** In the case at bar, Monaco's trial attorney was retained. Monaco signed two written acknowledgements of his understanding of the charges, his constitutional rights, the possible penalties and desire to enter guilty pleas. Monaco told the trial judge that he understood each one of the rights that he was waiving by entering his guilty pleas without hesitation, asking questions or confusion. Monaco further acknowledged he had the opportunity to fully discuss these matters with his attorney. T. *Change of Plea and Imposition of Sentence Hearing,* Oct. 21, 2020 at 15. After a defect in the original plea form was noted, Monaco's trial counsel told the judge that he had an opportunity to review the revised version with Monaco. Id. at 11-12. Monaco agreed. Id. When asked if he had

any questions or concerns about the changes that were made to the written plea agreement Monaco responded, "No your Honor." Id. at 12.

**{¶51}** Monaco's claims in his affidavit are disingenuous in light of his interview with the police and the hour-long tape-recorded telephone call with the victim in which the allegations were discussed. T. Nov. 30, 2020 at 29-30; State's Exhibit F. Monaco can hardly claim he did not know who is accuser was or what she was alleging. Clearly, having been interviewed by the police and speaking to the victim by telephone, Monaco was aware of the allegations being made and who was making them. Further, Monaco admitted that his trial attorney discussed the child pornography found by the police on his computer and electronic equipment at his home. T. Nov. 30, 2020 at 23. There is no evidence in the record, including the affidavit of Monaco, that provides any evidence or explanation to cast doubt upon the victim's credibility or motivation in coming forward with the allegations, or that suggests Monaco has a viable defense to any of the charges.

**{¶52}** We find the record supports the trial judge's decision discounting the statements made in Monaco's affidavit as being in conflict with the facts contained in the record.

**{¶53}** Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Monaco set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*Counsel's investigation by the Board of Professional Conduct*

**{¶54}** Monaco next contends that his attorney was preoccupied with a pending disciplinary complaint and therefore did not provide effective representation. *PCR Petition*

at 7. He further contends that his attorney was found to be untruthful in the pending investigation. Id.

**{¶55}** In a December 2020 complaint, disciplinary counsel alleged that Monaco's trial counsel had committed several ethical violations by engaging in inappropriate sexual communications and a physical sexual relationship with a client and then lying about that conduct during the ensuing disciplinary investigation. *Disciplinary Counsel v. Cox,* 168 Ohio St.3d 78, 2022-Ohio-784, 195 N.E.3d 1018. Counsel was eventually suspended from the practice of law in Ohio for two years with the second year stayed on conditions. Id. at ¶ 38.

**{¶56}** Counsel was licensed to practice law in the State of Ohio and was not under suspension at any time that he represented Monaco. The allegations of misconduct did not involve Monaco and it was not alleged that counsel was implicated in Monaco's crimes. Monaco provided no evidentiary materials to suggest that his attorney was not truthful in any matter related to Monaco's case.

**{¶57}** "[T]he breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside*, 475 U.S. 157, 165, 106 S.Ct. 988, 993, 89 L.Ed.2d 123, 134 (1986); *Bond v. United States* 1 F.3d 631, 636-637(7th Cir., 1993). Courts consistently have declined to adopt a per se rule that ineffective assistance always results when a disciplinary action is pending against the defendant's attorney. Id. *Accord, State v. Allen,* 121 Ohio App.3d 666, 669-670, 700 N.E.2d 682 (8th Dist. 1997). Rather the courts have required the defendant to show "actual errors and omissions by counsel that prejudiced the defense." *United States v. Williams*, 934 F.2d 847, 851-52 (7th Cir. 1991).

{¶58} Importantly, in the case at bar, counsel's disciplinary action occurred in an unrelated case and had nothing to do with his representation of Monaco. Given the compelling evidence against Monaco, we cannot say that the result would have been different had Monaco had a different attorney.

{¶59} Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Monaco set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

## Conclusion

{¶60} The petition, supporting affidavit and documents, file, and the record do not demonstrate Monaco set forth sufficient operative facts to establish substantive grounds for relief concerning.

{¶61} As Monaco did not establish substantive grounds for relief, the trial judge was not required to conduct a hearing before overruling his petition for postconviction relief. Accordingly, the trial court properly denied Monaco's petition for post-conviction relief without holding an evidentiary hearing.

{¶62} Monaco's First and Second Assignments of Error are overruled.

{¶63} The judgment of the Tuscarawas County Court of Common Pleas, Tuscarawas County, Ohio is affirmed.


By Gwin, J.,

Delaney, P.J., and

Wise, J., concur